403 P.2d 280

**STATE of Arizona, Appellee,**

v.

**Jesus Cerda SAENZ, Jr., Appellant.**

No. 1392.

Supreme Court of Arizona.

In Division.

June 16, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Stirley New-ell, Former Asst. Atty. Gen., Phoenix, for appellee.

John M. Levy, Phoenix, for appellant.

LOCKWOOD, Chief Justice:

Appellant, hereafter referred to as the defendant, was charged with the illegal sale of marijuana. After trial by jury defendant was convicted. The facts necessary for this appeal are as follows.

Jesse Caldera Saenz, Jr., not related to the defendant, and hereafter referred to as the informer, was an informer employed by the Narcotics Division of the Arizona Liquor Control Office. He testified that on the evening of April 19, 1963, he was working with Roy Charles Madrid, an undercover narcotics agent when at about 8:00 P.M. he and Officer Madrid parked in Madrid's automobile on Third Street and Jefferson, in Phoenix. The informer saw and greeted the defendant. The defendant asked the informer if he desired to buy some marijuana. The informer responded that he did not, but "maybe my friend Mike would." Officer Madrid was going under the name "Mike". After a short conversation between Officer Madrid and the defendant, the defendant agreed to sell Madrid six marijuana cigarettes for four dollars. The informer, Madrid, the defendant, Tony Armenta and two others drove in Madrid's car to the defendant's apartment. The defendant delivered six cigarettes to Madrid.

Officer Madrid also testified for the prosecution. His testimony was essentially the same as the informer's.

The defense witness, Tony Armenta, testified, contrary to the informer and Officer Madrid, that when the defendant approached Madrid's car, the informer asked the defendant if the defendant wanted to buy anything and the defendant answered, "no." The informer said he then asked the defendant if the defendant had anything to sell and the defendant answered in the negative. The defendant's testimony was similar to Armenta's. Both the defendant and Armenta testified that Officer Madrid and the informer drove them to the defendant's home in the "Library Apartments".

During cross examination of narcotics Officer Madrid the defense counsel asked Officer Madrid whether anything was said by anybody in the car on the way to the "Library Apartments", to which Officer Madrid answered:

"A. Yes, sir, * * *.

"Q. Well, what was said?
[Prosecutor]: "May we have a foundation as to where we are now.

[Defense Counsel]: "I told him at that time in the car. I mentioned that.

"THE COURT: Going from Third Street to 12th Avenue.

[Defense Counsel]: "Yes, that's correct.

"A. The conversation that was taking place during the time we was in the car was about Mr. Jesse Saenz the Defendant, and he was talking about a case that he had been acquitted on on narcotics by a jury prior to this, which was in 1962. And he was talking about —I will repeat this—

[Defense Counsel]: "Your Honor, I object to conversations of that kind. I think we are entitled to a mistrial at this time, and I think it's highly prejudicial before a jury that he makes statements of that kind. He knows better than that.

"THE COURT: Counsel, you asked him what the conversation was and he answered you what the conversation was. The motion for a mistrial is denied.

[Defense Counsel]: "Highly prejudicial.

"THE COURT: Well, counsel asked for it.

[Defense Counsel]: "Are you sure that's what he told you?

"A. I am very sure, sir. I am under oath, and I am positive that was the conversation.

"Q. Did you have any knowledge of that before?

"A. No, sir. Oh, no, sir, I did not have any knowledge. . · · ,

"Q. That he was acquitted?

"A. Well, sir, that's what he mentioned.

"Q. He told you that?

"A. That's the only thing, sir, that I know is what the gentleman told me.

"Q. And you didn't check on it?

[Prosecutor]: "If the Court please, I think that is immaterial. It goes into collateral matters that have nothing to do with this particular proceedings. It's in the form of hearsay if he did.

"THE COURT: I think he may answer. He asked for the conversation. He asked if he checked on it.

"A. I didn't check on the record. I did inquire about it, Mr. Levy.
[Defense Counsel]: "You found out it was true?

"A. Yes, sir. I believe you told me that it was true.

"Q. Who told you?

"A. You did. One day I was talking to you outside the courtroom.

"Q. How long ago was that?

"A. Not too long ago, sir. About two months ago, three months ago. I don't recall off hand. I believe you was telling Agent Barrios and myself.

"Q. Who was present?

"A. Agent Barrios and I'm not sure, sir, but at that time I know I have discussed it with you and you have mentioned it to me."

The defendant contends that the court below erred by refusing to grant the defendant's motion for a mistrial.

As pointed out above Madrid was an officer of the narcotics division. We said in State v. Kellington, 93 Ariz. 396, 381 P. 2d 215 that officers testifying for the State should know or be:

"* * * admonished by the prosecutor, that a mention of a prior conviction under such circumstances [similar to that in the instant case] was highly improper. Had counsel for defendant made an objection in the presence of the jury, and had the trial judge admonished the jury to strike such testimony from their minds, it would have served no real purpose. * * * Defendant's counsel brought this matter to the attention of the trial court in his request for a mistrial."

The answers of Officer Madrid on cross examination in this case would tend to show to the jury that the defendant had been arrested, informed against and tried for another crime. Even though there was an acquittal in that case, it may have prejudiced the defendant in the minds of the jurors here.

We note that the same narcotics agent, Officer Madrid, on cross examination in State v. Ybarra, 97 Ariz. 200, 398 P.2d 905

used language which tended to link the defendant to a different crime from that charged. We found this insufficient in that case to constitute reversible error because no objection or motion to strike was made. However, it is noteworthy that this veteran officer, by continuing to testify to matters which could be properly subject to objection as inadmissible and highly prejudicial, has failed to heed the admonition given in Kellington. Such conduct, if persisted in, may well result in reversible error where none would otherwise exist.

It cannot clearly be said that when the defense counsel, during the cross examination of Officer Madrid, asked whether there was a conversation in the automobile, that the defense counsel was soliciting from Officer Madrid information that the legal authorities, at a prior time and for a separate crime, had made a case against the defendant herein. Not only did Officer Madrid improperly volunteer this information but he added "And he was talking about—I will repeat this—". Apparently he was going to repeat this improper information about the defendant. The defense counsel objected and moved for a mistrial immediately after Officer Madrid's improper response. The court below should have granted the mistrial.

■ Defendant also claims that the court below committed reversible error when it allowed E. E. Rekos, a Chief in the Narcotics Division of the State Liquor Office and an investigating officer herein to remain in the courtroom at the request of the prosecutor after the court had excluded witnesses from the courtroom. The defendant claims that although Rekos was not called to the witness stand, he had the opportunity to relate to the state witnesses any testimony of witnesses who did testify. However there is no evidence that he did so. Defendant's claim is without merit. It was a matter of discretion for the trial court. State v. Armenta, 98 Ariz. 152, 402 P.2d 571 (June 9, 1965).

■ The defendant also claims that the trial court erred in denying defendant's motion for a directed verdict at the close of the state's case, charging that the evidence demonstrated that the defendant was entrapped by the government officers. The defendant improperly places reliance on Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) to support this proposition. Although under the peculiar facts of that case, the United States Supreme Court found there was entrapment the court said

"* * * the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials." (Italics in the original.)

In State v. Hernandez, 96 Ariz. 28, 391 P.2d 586 we said

" * * * a crucial element of the defense of entrapment is that the intent to commit the crime must not arise in the mind of the accused. * * * the defense of entrapment does not arise where one is ready to commit the offense given the opportunity, * * *."

The court was correct in denying the defendant's motion for a directed verdict.

However for the reasons above stated judgment reversed and remanded for new trial.

STRUCKMEYER, V. C. J., and Mc-FARLAND, J., concurring.